No. 84-467

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

DAVID RODNEY WARNICK,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Madden, Knuchel & McGregor; Dan McGregor, Livingston,
Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
W. Nels Swandal, County Attorney, Livingston,
Montana

---

Submitted on Briefs: Feb. 28, 1985

Decided: May 13, 1985

Filed: MAY 13 1985

*Ethel M. Harrison*

---

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The District Court of the Sixth Judicial District, Park County, denied David Rodney Warnick's motion for a continuance of trial and he was convicted of felony theft. Warnick appeals the conviction on the grounds that the District Court's denial of the continuance was an abuse of discretion that deprived him of due process and a fair trial.

On April 6, 1984, a burglary occurred at the Sterling Hotel in Park County. On April 9, 1984, relying on a tip, the police recovered the stolen property in a green duffle bag with the name "Victor Warnick" on it. Victor Warnick was contacted and stated he had given the bag to David Rodney Warnick. A pawn shop operator contacted by the police stated that on April 6, 1984 David Rodney Warnick approached him about selling some jewelry. Based on this and on a telephone call from a Theresa Clemons to a Park County Deputy Sheriff, Warnick was arrested. He was arraigned on a charge of felony theft on May 21, 1984 and a public defender was appointed.

Trial was set for July 23, 1984. On July 17, 1984 at an omnibus hearing, the trial date was changed to August 2, 1984. The District Court suggested August 1, 1984 but both attorneys would be out of the county on that date. A hearing on Warnick's motions for change of venue and disclosure of informants' names was scheduled for July 25, 1984.

On July 25, 1984, the District Court denied the motion to change venue and granted Warnick's motion for disclosure of the informants' names. This was an oral order that was reduced to writing on July 26, 1984. The names of the informants were not revealed to the defense attorney until

late on July 30, 1984. The reason for the delay is not clear. Apparently the county attorney was out of town when the order was made and the sheriff and police department were reluctant to comply with the order. Nels Swandal, Park County Attorney, told the District Court:

"THE COURT: So that the record may be straight, Mr. Swandal, would it be correct the reservation or hesitancy about disclosing the names of these two people hasn't been through the County Attorney's office but rather the Sheriff's office.

"MR. SWANDAL: The Sheriff and the Police Department, your Honor. Frankly, the one that I disclosed yesterday, I don't think there should have been any hesitancy because he wasn't involved in any sort of informant or confidential informant tape situation. He was never promised that. The other one was in the State of Washington until today, and we couldn't get her here. And the Police and I had a round concerning whether she would be disclosed or not. And I have talked to her and she is willing to do an interview."

On July 31, 1984, after talking with Stan Marchington, one of the disclosed witnesses, appellant's attorney moved for a continuance because of the delay in disclosing the informants' names. The motion was denied. The case came to trial on August 2, 1984 and Warnick was convicted.

Stan Marchington was called as a witness. He was not an informant, having never contacted the police about this matter. Theresa Clemons, the informant who contacted the police, did not testify. Marchington testified that Clemons was sitting with him while he was playing cards in a Livingston bar when Warnick approached her. Marchington testified that she told him Warnick wanted to sell her something. She wanted Marchington to accompany her and he complied. Marchington, Clemons, and Warnick went in Clemons' car to Warnick's brother's home. Marchington testified that Warnick left the car, went into his brother's garage, and returned carrying a duffel bag. He showed Marchington and

- 3 -

Clemons a "bunch of coins." Marchington testified that Warnick said he had stolen the items from Chester Johnson's safe and he now wanted to sell it to them. According to Marchington, they declined the offer and returned to the Sterling Hotel.

At the Sterling, according to Marchington's testimony, Warnick left the bag in Clemons' car. Clemons and Marchington urged him to take it but he refused, saying he was tired of it. Clemons and Marchington then drove from Livingston to Emigrant where they buried the bag.

What happened next appears in the record of the hearing on the motion for disclosure of informants. Bradford Wilson, a Park County Deputy Sheriff, testified that Theresa Clemons called him on April 9, 1984 because they were acquainted. He testified that she was frightened and wanted to know what to do with the stolen property. She told him where the bag was buried and he recovered it. The officer testified that although the police obtained the arrest warrant after talking to Clemons, Warnick was already their suspect.

The issue on appeal is whether the District Court abused its discretion in denying the continuance motion when, with trial set for August 2, the informants' names were not revealed to his attorney until late July 30 and the County Attorney knew appellant's attorney would be out of the county August 1. We agree with appellant that the Park County Attorney's office and the Park County Sheriff and Police acted improperly in refusing to comply with the District Court's order to disclose the informants' names. But in this case we find this harmless error and agree with the District Court that it was not grounds for granting a continuance.

Section 46-13-202, MCA, is the applicable statute on continuance. It states in part, "(3) All motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant." In State v. Paulson (1975), 167 Mont. 310, 315, 538 P.2d 339, 342, we expressed the standard to be applied on appellate review of a motion for continuance:

> "Motions for continuance are addressed to the discretion of the trial court and the granting of a continuance has never been a matter of right . . . The district court cannot be overturned on appeal in absence of a showing of prejudice to the movant."

Counsel for Warnick should have been told the informants' names immediately after the judge's order. Warnick has clearly established error but there is no prejudice. The interview of Marchington on July 31, 1984 provided no information supporting Warnick's innocence. Appellant has not established how receiving the names on July 25 instead of July 30 would have changed the result of the trial. Reviewing the record of the testimony of Marchington and Bradford Wilson we find nothing exculpatory. Appellant has established a serious disregard of a court order by the County Attorney and the law enforcement agency but no harm.

The principle that harmless error on the part of the trial judge is not grounds for reversal is well established. We agree that harmless error is not grounds for a continuance of the trial. In Chapman v. State of California (1966), 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705, 709, the United States Supreme Court declined to rule that all federal constitutional violations are harmful error. The Court upheld state and federal harmless error statutes and rules

stating "[a]ll of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the results of the trial." The Court went on to hold that before an error may be held harmless the reviewing court must be able to state its belief that the error is harmless beyond a reasonable doubt. This Court has followed the harmless error rule. See, for example, State v. Sandstrom (1979), 184 Mont. 391, 393, 603 P.2d 244, 245, where this Court held that because an error in jury instructions was not harmless the case had to be retried.

The harmless error rule is also codified. Section 46-20-701, MCA, states:

> ". . . No cause shall be reversed by reason of any error committed by the trial court against the appellant unless the record shows that the error was prejudicial."

and Rule 14 of the Montana Rules of Appellate Civil Procedure:

> ". . . And no cause shall be reversed upon appeal by reason of any error committed by the trial court against the appellant, where the record shows that the same result would have been attained had such trial court not committed an error or errors against the respondent."

In this case the District Court did not abuse its discretion in denying the continuance because, although it was a serious matter for the State to withhold the informants' names until two days before trial, no prejudice is demonstrated. The record shows beyond a reasonable doubt that the delay in providing Warnick with the informants' names was harmless because the informants could provide nothing that would refute the State's case. In addition, although Clemons was an informant, Warnick can hardly claim

she was an unknown informant. This is not a case where the defendant is being denied the opportunity to confront his accusers because they are unknown to him. Although he may have been unaware that Clemons and Marchington were the informants, he had personal knowledge that they were involved in the activities of the evening and could have sought them out.

It should be noted that this Court does not condone withholding names after the District Court ordered the State to disclose the names of informants. The judge's order was dispositive of this matter. The constable as well as the County Attorney must obey that order; their "concerns" or "hesitancies" are irrelevant. We call to the State's attention Ethical Consideration 7-13 of the Model Code of Professional Responsibility.

> "EC 7-13 The responsibility of public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict. This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute; (2) during trial the prosecutor is not only an advocate but he also may make decisions normally made by an individual client, and those affecting the public interest should be fair to all; and (3) in our system of criminal justice the accused is to be given the benefit of all reasonable doubts. With respect to evidence and witnesses, the prosecutor has responsibilities different from those of a lawyer in private practice: the prosecutor should make timely disclosure to the defense of available evidence, known to him, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment. Further, a prosecutor should not intentionally avoid pursuit of evidence merely because he believes it will damage the prosecutor's case or aid the accused. (Emphasis added.)

We affirm the District Court's denial of a continuance because appellant has not shown prejudice but we in no way condone the actions of the law enforcement agencies or the

County Attorney.    The judgment of the District Court is affirmed.

_____
                    Justice

We Concur:

_____
          Chief Justice

_____

_____

_____
          Justices

- 8 -